PRESENT: Ross, Ch. J., TAFT, ROWELL, TYLER, MUNSON, START, AND THOMPSON, JJ.

## WILLIAM C. CROFT *v.* BENNINGTON & RUTLAND RY. CO.

*Railroad Company. Special charter modified by general law. Condemnation of land. Notice to land owner. Title by occupation. Equity.*

1. The special charter of a railroad company was made subject to general legislation. At the same session a general law was enacted which modified the provisions of the special charter as to the condemnation of lands, but which did not go into effect until after the special charter. *Held*, that until the general law took effect the company should act under its charter in condemnation proceedings.

2. Where the charter required that commissioners appointed for the appraisal of land damages should give the land owner fifteen days notice, and their report shows that they in fact only gave three and that the land owner did not appear, the proceedings are void upon their face.

3. If the company subsequently enters upon the land, and constructs and fences its road upon a parol agreement with the owner that for the sum awarded by the commissioners it shall have the right of way as fenced, and shall leave the owner the use of a spring of water near the track, it will not acquire by occupation title to any land except that between its fences as then located.

4. Equity will enjoin the successors by mortgage to the original company from setting out the fences to the surveyed limits and thereby taking the owner's land and interfering with his use of the spring.

This was a bill in chancery brought to restrain the defendant from moving its fences along the line of its track where the same crossed the premises of the orator. Heard at the September term, 1890, Rutland county, upon bill, answer and stipulation. Taft, Chancellor, dismissed the orators' bill *pro forma.* The orator appeals.

From the pleadings and stipulation the following facts appear :

November 5, 1845, the legislature chartered the Western Vermont Railroad Co. The charter provided that unless the road should be completed within five years it should become void. It further provided that if the land-owners and company could not agree as to the value of lands taken, the damages should be determined by three commissioners to be appointed by judges of the county court for the county in which the lands were situated, who should give the land-owners and the company fifteen days notice of the time and place of hearing.

The road was not completed within five years, but by an act approved November 6, 1849, the original charter was amended by providing that the road might be begun within three years and completed within five. This amendment also made the entire act subject to the general law then in force, or afterwards enacted for the regulation and government of railroad corporations.

At the same session a general law was passed in reference to the assessment of land damages, by which it was enacted that in case the parties could not agree, the damages were to be determined by a commission of three to be appointed by the judges of the supreme court. This act did not take effect until December 1, 1850.

In the fall of 1849, the Western Vermont Railroad Co. surveyed and located its road through the lands of the orator, which

were then owned and occupied by one Ross, and not being able to agree with the owner as to the amount of his damage, application was made at the April term, 1850, to the judges of the county court for the County of Rutland, within which the land was situated, and three commissioners were appointed by them to appraise the damages. These commissioners made their report which was recorded in the town clerk's office, for the town of Clarendon in which the land lay. In this report the commissioners recited, that they gave the company and the said Ross, three days notice of the time and place when they would hear them, and that the said Ross did not appear.

The following summer an agreement was made between Ross and the company, that the company should construct its road upon the survey through his land, making a fill about four feet high, and should construct its fences along the foot of the embankment thus made, and that for the land so taken he should be allowed the sum which the commissioners had awarded him by way of damages. It was further agreed that the company should conduct a certain spring which there was close to the embankment, along the side of the embankment, and thence underneath its track, and that the fence should be so constructed that the spring would be accessible from the field of said Ross. This agreement was by parol.

Under this arrangement the railroad company did construct its railroad, and did build its fences along the foot of the embankment, and did suffer the spring to run along beside its embankment to the point specified and there conduct it underneath its track.

The Western Vermont Railroad Co. mortgaged its property and franchises to trustees to secure certain bonds; this mortgage was afterwards foreclosed, and the bondholders organized themselves into the Bennington & Rutland Railroad Co., the defendant in this suit. Both the Western Vermont Railroad Co. and the defendant continued to maintain and use its railroad and

fences as originally constructed, until just before the bringing of this bill, when the defendant began moving back the fences from the dump where the same crossed the orator's premises onto the line of the original survey in such a manner as to occupy more of the land than had been formerly occupied, and to cut off the orator from access to the spring previously mentioned. Thereupon the orators, who had acquired the premises by purchase and conveyance from Ross, brought this suit asking that the defendant be enjoined from so moving its fences.

*J. C. Baker* for the orator.

A railroad company in the condemnation of land must keep strictly within the conditions of the statute or the proceedings will be void. *Derby* v. *Railroad,* 119 Mass. 516; *Wilson* v. *Lynn,* 119 Mass. 174.

The report of the commissioners does not show that the parties had failed to agree as to the value of the lands deeded. Hence they had no jurisdiction. 7 Law. Rights, Rem. & Pr. s. 3895; *Reed* v. *Railroad,* 126 Ill. 48.

They did not give the required notice, and their proceedings are therefore void. 2 Beach Rail. s. 834.

The charter of the Western Vermont Railroad Co. as amended was subject to the general law. The general law provided a different way for the appraisal of land damages. Therefore, the whole proceeding actually had in this case was of no validity. *Grant* v. *Grant,* 32 Am. Rep. 506; *Bangor* v. *Goding,* 35 Me. 73; *Snell* v. *Campbell,* 24 Fed. Rep. 880; 7 Law. Rights, Rem. & Pr. s. 3780; *Railroad Co.* v. *St. Johnsbury,* 59 Vt. 320.

The successors of the Western Vermont Railroad Co. stand no better than that company itself. The fences across the orator's premises were constructed and were notice to everybody of just what that company was occupying. *McAuley* v. *Railroad,* 33 Vt. 311.

*Henry A. Harman,* for the defendant.

The Western Vermont Railroad Co. properly proceeded in accordance with its special charter in the condemnation of lands, until the general law took effect. *Danforth* v. *Smith*, 23 Vt. 247.

The report of the commissioners showed that they heard the parties. This implies that Ross must have been present at the hearing. If present his appearance would waive any defect in the notice. *Hammond* v. *Wilder*, 25 Vt. 342.

The company duly recorded the report of the commissioners and deposited the amount of money awarded by them, in compliance with the statute. It thereby became seized of a strip of the width of the original survey, and no subsequent parol agreement could alter the boundaries of the lands which were thus acquired. At most, such an agreement would simply be a parol license which would be terminated by the death of the licensee or the alienation of the property. *Bartlett* v. *Prescott*, 41 N. H. 493; *Houston* v. *Laffee*, 46 N. H. 505; *Hill* v. *Hill*, 113 Mass. 103; *Mumford* v. *Whitney*, 15 Wend. 380; *Root* v. *Railroad Co.*, 23 Conn. 214; *Cobb* v. *Fisher*, 121 Mass. 169.

Neither the orators nor their grantor did any such act upon the premises as would render the license irrevocable. *Canfield* v. *Hard*, 58 Vt. 217; Story Esq. Jr., s. 763; *Meach* v. *Perry* 1 D. Chip. 182.

By recording its survey the company acquired a right to appropriate this land for the purposes of its railroad within the limits defined by that survey; and when Ross accepted the amount awarded by the commissioners he waived any antecedent irregularity in their proceedings. *Hitchcock* v. *R. R. Co.*, 25 Conn. 516; *Troy & Boston R. R. Co.* v. *Potter*, 42 Vt. 265.

The opinion of the court was delivered by

ROSS, Ch. J. The company organized under the charter granted to the Western Vermont Railroad Company, November 5, 1845, by the terms of the charter was to be dissolved and be-

come void, unless within five years from the passage of the act, the company built and put in operation ten miles of its road. This the company did not do ; but within the five years, November 6, 1849, the legislature passed an act amending and extending the charter granted by the act of November 5, 1845. The act extending the original charter, gave the company three years from the passage of the extending act to commence the construction of its road and five years in which to complete it. The act granting the charter never became void by its terms. Before the time arrived for that to take effect, the legislature gave the company farther time, in which to build its road. From the passage of the extending act the original act was to be read, as though the provisions of the extending act were incorporated into it. The original act did not become void, but enlarged and modified by the extending act. By the extending act the charter was made subject to all general laws, then in force, or thereafter passed. On November 13, 1849, the legislature passed a general law relating to railroad corporations, which was not to become operative until December 1, 1850. The charter of the Western Vermont Railroad Company did not become subject to this law until that date. Both the charter and this general law had provisions, somewhat variant from each other, relative to the appointment and proceedings of commissioners, appointed to appraise the damages of the land owners whose lands should be taken for the purposes of the railroad. The company could proceed according to the provisions of its charter, in taking and appraising lands necessary to be taken for its road, until the general law became operative. It cannot be that the legislature, while requiring the company to complete its road in five years, or lose that right, intended, by making it subject to any general law, to leave it without any provisions for taking the necessary land of owners with whom they could not agree. Hence, before December 1, 1850, when the general law on this subject became operative, the company might procure the appointment of commissioners, by the judges of the county court,

and the commissioners so appointed might proceed in appraising the damages sustained by the land owners agreeably to the original charter. The bill alleges that the commissioners who undertook to act in the appraisal of the land taken from Walter Ross, were appointed by the county court within and for the county of Rutland, but the answer states they were appointed by the judges of the county court for that county. By the stipulation this allegation of the answer is to be taken to be true for the purposes of this trial. Hence the commissioners who undertook to act in the matter of taking and appraising the lands of Walter Ross were properly appointed and had authority to act, at the time they undertook to act in November, 1850, in defining and appraising the lands necessary to be taken from the lands owned by Walter Ross. But being a tribunal of special and limited jurisdiction, and their proceedings relating to the exercise of the right of eminent domain, in taking the property of Walter Ross without his consent, it was necessary that they should proceed in the exercise of their power, strictly in accordance with the provisions of the charter. Without so proceeding they would not obtain and retain jurisdiction to condemn his land. The charter required that they should give him fifteen days notice of the time and place of making the appraisement. The giving of this notice was requisite to obtain jurisdiction over him,—he being a resident of the State,—so that they could render a judgment which would bind him personally. In the award which was recorded, the commissioners say that they gave Walter Ross only three days notice and that he did not appear. After stating that he did not appear, the commissioners say, " And having viewed said premises and heard said parties in the matter, &c." It is contended by the defendant that by this it is to be understood that Walter Ross did appear and was heard on the subject of appraisement. If he did appear and was heard on the subject of the appraisment, he would waive the want of requisite notice and submit to the jurisdiction of the commission-

ers in the matter. The notice was required to be given that he might have an opportunity to be heard. Hence, if he actually appeared and was heard the ends to be attained by requiring fifteen days notice would have been attained. But we think the fair construction of the language of the award, " the said Walter Ross did not appear, and having viewed the premises and heard said parties in the matter " is that he did not appear and was not heard by the commissioners in the matter of the appraisement, and the words " said parties " mean the parties who did appear for the railroad company. Walter Ross not having had the required notice, and not having appeared, the proceedings of the commissioners were without legal force to bind him. The record of the award carried on its face notice to the company and to all who took any interest in the road from the company that the proceedings of the commissioners were without legal force from the failure of the commissioners to give the required notice and to acquire jurisdiction to proceed with the appraisement. But the defendant contends that by taking possession of the lands of Walter Ross, by constructing their road thereon, and by having recorded their locating survey and this award their possession extended constructively to the limits of the survey. By the seventh section of the charter, the company did not obtain title or seizin of lands attempted to be condemned by recording the survey. That was but one of the required steps. It must also have it legally appraised, and the money to pay the appraised damages, must be paid or deposited agreeably to the act. When all this was done agreeably to the charter, it is declared, " then said corporation shall be deemed seized and possessed of such lands so appraised by said commissioners." Hence the defendants' and their successors' possession did not extend beyond such lands of Walter Ross as it actually occupied, and by his possession of that portion of the land covered by the locating survey and award of the commissioners, occupied by Walter Ross, he occupied in his own right. When therefore the defendant en-

William C. Croft *v.* Bennington & Rutland Ry. Co.

tered, subsequently to making the award, into an agreement with the defendant that he should receive the sum awarded for the land actually fenced and occupied by the defendant for the purposes of its railroad, the parties stood upon that agreement alone, and the possession of each was notice to all of their respective rights. Their respective possessions indicated to all the world their respective rights against each other. Neither party could convey any greater rights than his possession indicated.

*The pro forma decree is reversed and cause remanded with a mandate to enter a decree for the orators in accordance with the prayer of the bill.*